United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   NICOLE ZILVETI,                          No. C-15-2494 MMC

12           Plaintiff,                        **ORDER DENYING DEFENDANT'S
         v.                                    MOTION TO DISMISS, TRANSFER AND
13                                             TO STRIKE; VACATING HEARING**
     GLOBAL MARKETING RESEARCH
14   SERVICES, INC.,

15           Defendant.
     _____/

16

17        Before the Court is defendant Global Marketing Research Services, Inc.'s ("GMRS")

18   "Motion to Dismiss or Transfer," filed July 22, 2015, as supplemented September 2, 2015.

19   Plaintiff Nicole Zilveti ("Zilveti") has filed opposition, as has intervenor United States of

20   America.  GMRS has not filed a reply.  Having read and considered the papers filed in

21   support of and in opposition to the motion, the Court rules as follows.[1]

22                                **BACKGROUND**

23        Zilveti alleges GMRS "is in the business of conducting telephone surveys by making

24   autodialed calls" (see Compl. ¶ 1), and, in particular, that GMRS has "utilized an automatic

25   telephone system" to do so (see Compl. ¶ 10).  Zilveti also alleges that, over the course of

26   a week in August 2014, she received "six unsolicited phone calls" from GMRS on her cell

27   _____

28        [1]By order filed January 25, 2016, the Court took the matter under submission.
     Thereafter, on the same date, GMRS filed a Notice of Recent Court Order, which document
     the Court has considered.

phone.  (See Compl. ¶¶ 21, 28.)  Zilveti further alleges she initially tried to answer the calls,

but "no one would come onto the line," and when she "finally called the number back," she

"heard [a] pre-recorded voicemail which identified that the calls were being made by a

survey company."  (See Compl. ¶ 20.)  According to Zilveti, GMRS made such "automated

telephone calls" without having obtained her "prior express oral or written consent to

receive such calls."  (See Compl. ¶ 28.)  Based on such allegations, Zilveti asserts GMRS

has violated the Telephone Consumer Protection Act ("TCPA"), specifically, the provision

set forth in 47 U.S.C. § 227(b)(1)(A)(iii).  Zilveti, who alleges she is a citizen of and resident

in California (see Compl. ¶¶ 5, 9), seeks to proceed on her own behalf and on behalf of "all

individuals in California" who received the same type of unsolicited calls from GMRS.  (See

Compl. ¶ 22.)

**DISCUSSION**

By its motion, GMRS seeks an order transferring the case to the Middle District of

Florida or, alternatively, an order dismissing the complaint and/or striking certain allegations

therefrom.  The Court considers each such request in turn.

**A.  Transfer**

GMRS argues the case should be transferred to the Middle District of Florida under

the "first to file" rule or, alternatively, under 28 U.S.C. § 1404(a).[2]

**1.  First to File Rule**

Under the "first to file" rule, a district court has discretion to "decline jurisdiction over

an action when a complaint involving the same parties and issues has already been filed in

another district."  See Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th

Cir. 1982).

Here, the prior action on which GMRS relies, specifically, Martin v. Global Marketing

---

[2]Additionally, GMRS's counsel of record states in a declaration that there are two
other actions challenging the type of calls Zilveti allegedly received, albeit involving different
putative classes, and that said other two actions and the instant action "should be
considered for Multi-District consolidation in the Middle District of Florida under 28 U.S.C.
§ 1407."  (See Schwartz Decl. ¶ 20.)  A request for transfer pursuant to § 1407, however,
must be made to the Judicial Panel on Multidistrict Litigation.  See 28 U.S.C. § 1407(a).

1   Research Services, Inc., which action is pending in the Middle District of Florida, raises

2   many of the same issues as are raised in the instant action, e.g., whether GMRS "utilized

3   an automatic telephone dialing system" to call the plaintiff.  (See Schwartz Decl. Ex. E

4   ¶ 14.)  Zilveti, however, is not a named party to the action pending in Florida, nor does the

5   putative class in that action include individuals residing in California.  (See id. Ex. E ¶ 31.)

6   Under such circumstances, the Court declines to transfer the instant action under the first

7   to file rule.  See Pacesetter, 678 F.2d at 95-96 (finding "first to file rule" applies where, inter

8   alia, same parties are "involved in both suits"); see also Alltrade, Inc. v. Uniweld Products,

9   Inc., 946 F.2d 622, 628 n.13 (9th Cir. 1991) (observing that if "parties involved in the two

10  suits were not the same, adherence to the first-to-file rule would be reversible error").

11      Accordingly, to the extent the motion seeks transfer under the first to file rule, the

12  motion will be denied.

13      **2. Section 1404(a)**

14      "For the convenience of parties and witnesses," an action may be transferred to

15  another district in which it could have been brought.  See 28 U.S.C. § 1404(a).

16      In support of its request for transfer under § 1404(a), GMRS argues that, with the

17  exception of Zilveti and the putative class, who received calls in California, "[a]ll known

18  witnesses to any conduct by [GMRS] claimed violative of the TCPA are in Florida."  (See

19  Def.'s Mot. at 7:2-5.)  GMRS identifies no such witness, however, and offers no evidence in

20  that regard other than a statement in a declaration by its counsel of record that the GMRS

21  employees who place phone calls on behalf of GMRS reside in Florida (see Schwartz Decl.

22  ¶ 7), which statement fails to describe in any manner the testimony any such individual

23  would be expected to give at trial.  See Brandon Apparel Group, Inc. v. Quitman

24  Manufacturing Co., 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999) (holding, where defendant

25  failed to provide court with information necessary to evaluate nature and quality of

26  witnesses' expected testimony, defendant failed to show transfer was necessary for

27  convenience of witnesses).  Moreover, even assuming at least some of GMRS's

28  employees would be called to give relevant testimony, a transfer under § 1404(a) is not

3

1   appropriate where it will "merely shift rather than eliminate the inconvenience."  See

2   Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).  Rather,

3   a defendant seeking transfer must "make a strong showing of inconvenience to warrant

4   upsetting the plaintiff's choice of forum."  See id.  On the limited record before the Court,

5   such a strong showing has not been made.

6       Accordingly, to the extent the motion seeks transfer under § 1404(a), the motion will

7   be denied.

8   **B. Dismissal**

9       GMRS argues the complaint should be dismissed under Rule 12(b)(6) of the Federal

10  Rules of Civil Procedure because, according to GMRS, (1) the instant action is duplicative

11  of the above-referenced Martin case pending in the Middle District of Florida, (2) Zilveti fails

12  to state a claim for relief under the TCPA, and (3) the section of the TCPA on which Zilveti

13  relies, § 227(b)(1)(A)(iii), is unconstitutional.  For the reasons stated below, the Court finds

14  none of GMRS's arguments persuasive.

15      First, although a "duplicative" complaint is subject to dismissal, the instant action is

16  not "duplicative" of Martin, as Zilveti is neither a plaintiff in that action nor in privity with the

17  plaintiffs named therein.  See Adams v. California Dep't of Health Services, 487 F.3d 684,

18  688-89 (9th Cir. 2007) (holding "[t]o determine whether a suit is duplicative, [courts] borrow

19  from the test for claim preclusion," which requires a showing that "the parties or privies to

20  the action are the same").

21      Second, contrary to GMRS's argument that Zilveti has failed to state a claim, the

22  TCPA covers "noncommercial speech," see Gomez v. Campbell-Ewald Co., 768 F.3d 871,

23  876 (9th Cir. 2014), and, consequently, Zilveti need not allege GMRS's calls were made for

24  a commercial purpose.  Additionally, although, as GMRS points out, the Code of Federal

25  Regulations exempts from the TCPA certain calls "placed to a wireless number that has

26  been ported from wireline service," see 47 C.F.R. § 64.1200(a)(iv), Zilveti need not plead

27  facts to show such exemption is inapplicable, as the applicability thereof is an affirmative

28  defense.  See United States v. McGee, 993 F.2d 184, 187 (9th Cir. 1993) (holding "[the

4

1   plaintiff] is not required to plead on the subject of an anticipated affirmative defense");

2   United States v. Dish Network, LLC, 75 F. Supp. 3d 916, 937 (C.D. Ill. 2014) (holding

3   exemptions set forth in Code of Federal Regulations are "treated as [ ] affirmative

4   defense[s]").  Similarly unavailing is GMRS's reliance on a California regulation that lists,

5   among "permissible uses" of telephone numbers provided on voter registration forms,

6   "conducting any survey of voters in connection with any election campaign."  See Cal.

7   Code Regs. tit. 2, § 19003.  Even assuming such regulation obviates the need to obtain

8   express consent from such registered voters, Zilveti does not allege she provided her cell

9   phone number on a voter registration form or that the calls were made for any of the

10  purposes identified in the regulation, nor is she required to do so, see Grant v. Capital

11  Management Services, L.P., 449 Fed. Appx. 598, 600 n.1 (9th Cir. 2011) (holding "'express

12  consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative

13  defense").

14        Third, the Ninth Circuit has found the application of § 227(b)(A)(iii) to calls made to

15  cell phones does not violate the First Amendment, see Gomez, 768 F.3d at 874, 876-77

16  (9th Cir. 2014); consequently, GMRS's argument that the section is unconstitutional as

17  applied to the calls here at issue is unavailing.  Lastly, to the extent GMRS argues it is

18  unconstitutional to impose liability under the TCPA when "political polling research

19  companies . . take all reasonable precautions to prevent autodialing cell phones" (see

20  Def.'s Mot. at 9:16-19), any such argument, if not barred by the holding in Gomez, is

21  premature at the pleading stage, as Zilveti does not allege GMRS has taken any step, let

22  alone all reasonable precautions, to avoid autodialing cell phones.  See Allarcom Pay

23  Television, Ltd., v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir.1995) (holding district

24  court, when considering motion to dismiss for failure to state claim, must "limit [its] review to

25  the contents of the complaint").

26  **C. Striking Allegations**

27        "The court may strike from a pleading . . . any redundant, immaterial, impertinent, or

28  scandalous matter."  Fed. R. Civ. P. 12(f).  GMRS contends ¶ 17 of the complaint is "wholly

immaterial, impertinent, and scandalous" (see Def.s' Mot. at 11:16), and, consequently, should be stricken.

In the challenged paragraph, Zilveti first alleges:

> Consumer complaints about [GMRS's] invasive and repetitive calls are legion. For example, a single online complaint board has twenty-eight pages of complaints (approximately 560 complaints) from consumers receiving unwanted and repeated calls from [GMRS].

(See Compl. ¶ 17.)  The above allegation is then followed by five such "complaints," the first of which states, "'I've been getting calls . . . 5 or 6 times a day'" and "'[n]o one is on the line when I answer.'"  (See id.)

The Court is not persuaded that the allegations in ¶ 17 should be stricken. Elsewhere, in a portion of the complaint GMRS has not sought to strike, Zilveti alleges GMRS has "received or is aware of hundreds of complaints regarding its calls" and has "received hundreds of requests that the calls stop" (see Compl. ¶ 38); based thereon, Zilveti asserts that GMRS, in making the calls it placed to her cell phone, "wilfully" violated the TCPA.  (See Compl. ¶¶ 37, 40.)  The challenged "examples" (see Compl. ¶ 17) of the alleged "hundreds of complaints" GMRS has received (see Compl. ¶ 38), if offered at trial in an admissible form, would appear to be relevant to establishing willfulness to the extent the complaints pertain to the use of an "automated telephone dialing system" to make calls to cell phones.  See 47 U.S.C. § 227(b)(1)(A)(iii); De Los Santos v. Millward Brown, Inc., 2014 WL 2938605, at *3 (S.D. Fla. 2014) (holding "signature of autodialing" is that recipient of phone hears "dead air" when answering call).

**CONCLUSION**

For the reasons stated above, defendant's motion is hereby DENIED.

**IT IS SO ORDERED.**

Dated:  February 16, 2016

MAXINE M. CHESNEY
United States District Judge